# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMES HAMMOND, SR., <br> on behalf of J.H. | ) ) ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Civil Action No. 15-0163 (RBW) |
|  | ) | |
| DISTRICT OF COLUMBIA, | ) | |
|  | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

James Hammond, Sr. ("the plaintiff"), on behalf of his minor son, J.H. ("the Student"), brings this action against the District of Columbia ("the defendant" or the "District") under the Individuals with Disabilities Education Act ("IDEA").[1]  Pending before the Court are the Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Pl.'s Mot. Summ. J."), and the Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment ("Def.'s Cross-Mot. Summ. J.").  Upon careful consideration of the parties' submissions and the entire record in this case, the Court concludes that it must grant in

---

[1] "Th[is] legislation was enacted as the Education of the Handicapped Act, title VI of Pub. L. 91–230, 84 Stat. 175, and was renamed the Individuals with Disabilities Education Act in 1990, see § 901(a)(3), Pub. L. 101–476, 104 Stat. 1142." Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239 (2009).  The Individuals with Disabilities Education Act ("IDEA") has been codified in sections scattered throughout Title 20 of the United States Code.  See Bd. of Trs. v. Garrett, 531 U.S. 356, 391 app. B (2001) (Breyer, J., dissenting).

part and deny in part the plaintiff's motion for summary judgment and deny the defendant's

cross-motion for summary judgment.[2]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In August 2012, the Student's mother retained Alana Hecht, an attorney with the law firm

D.C. Disability Law Group, P.C., to help obtain the Student an appropriate educational

placement.  Pl.'s State. Mat. Facts ¶ 55.  At the time, the Student was attending his

"neighborhood school."  Id. ¶ 51.  During the 2012–13 school year, however, the Student's

mother transferred him to Ballou Senior High School ("Ballou").  Id. ¶ 56.  At Ballou, the

Student "made no academic progress" and "had attendance problems, behavior problems, and

learning difficulties."  Id. ¶ 57.  In fact, the Student "failed ninth grade during the 12–13 school

year and again during the 13–14 school year."  Id. ¶ 59.  Despite these shortcomings, the

defendant "refused to increase the hours on [the Student's individualized education program

("IEP")] . . . and refused to offer any alternative placements for [him]."  Id. ¶ 60.

"Initially, [an administrative] Complaint was filed on the [mother's] behalf in June of

2014."  Id. ¶ 61.  "The Complaint alleged a number of denials of a [free appropriate public

education][,] including [the] failure to provide an appropriate IEP and placement for the

Student."  Id. ¶ 62.  "The parties had a resolution session, a Pre-Hearing Conference, and . . .

filed their five-day disclosure documents in preparation for the due process hearing."  Id. ¶ 63.

---

[2] In addition to the documents previously referenced, the Court considered the following submissions in reaching its decision: 1) the plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Mem."); 2) the plaintiff's Statement of Material Facts Not in Dispute ("Pl.'s State. Mat. Facts"); 3) the Pl.'s Mot. Summ. J., Exhibit ("Ex.") C (Hearing Officer Determination ("Determination")); 4) the plaintiff's Complaint for Declaratory Judgment & Relief ("Compl."); 5) the plaintiff's Verified Statement of Attorney Alana Hecht ("Pl.'s Ver. State. Att'y Hecht"); 6) the plaintiff's Affidavit of Carolyn Houck ("Houck Aff."); 7) the plaintiff's Affidavit of Elizabeth Jester ("Jester Aff."); 8) the plaintiff's Mot. Summ. J., Ex. A (Invoice); 9) the the plaintiff's Reply to Defendant's Opposition to Motion for Summary Judgment & Opposition to Defendant's Cross-Motion for Summary Judgment ("Pl.'s Reply Def.'s Cross-Mot. Summ. J."); and 10) the defendant's Reply to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment ("Def.'s Reply Pl.'s Opp'n Def.'s Cross-Mot. Summ. J.").

Thereafter, attorney Hecht learned that the Student "had been placed in his father's custody and that the mother . . . was no longer the legal guardian." Id. ¶ 64. Hecht "attempted to continue on with the case and asked for permission to change the Petitioner in the case from the mother to the father . . . ." Id. ¶ 65. "However, the [defendant] objected to the continuance and substitution . . . , and the Hearing Officer . . . did not allow such a replacement, instead requiring that the case be withdrawn without prejudice and refiled with the father as Petitioner." Id. ¶ 66.

Because the 2014–15 school year was fast approaching, "the father . . . sent a letter to [the defendant] regarding his intent to unilaterally place [the Student] at New Beginnings Vocational School." Id. ¶ 68. The defendant responded, stating that it "would not be willing to fund the private placement at New Beginnings Vocational . . . , [and] alleging . . . that a [free appropriate public education] was available for [the Student] at Ballou." Id. ¶ 71.

"[T]he Student, who by then was age 16, and in the ninth grade for the third time, began the 2014–2015 [school year] unilaterally placed at New Beginnings Vocational School." Id. ¶ 72. "Immediately after the Student started at New Beginnings, the Student began having more academic and emotional/social success than he had displayed in years." Id. ¶ 73.

Unable to settle the case, "the [d]ue process complaint was re-filed on September 18, 2014 by [the father]." Id. ¶ 75. "A Pre-Hearing Order was issued on October 14, 2014," id. ¶ 79, which "certified for hearing" eleven issues, see id. ¶ 80.

The parties served five-day disclosures on each other. Id. ¶ 82. The plaintiff's "five-day disclosure contained a list of 6 potential witnesses including one expert and a list of 46 proposed exhibits totaling 540 pages." Id. ¶ 83. The defendant's "five-day disclosure contained a list of 8 witnesses and . . . proposed exhibits totaling approximately 63 pages." Id. ¶ 85. According to the plaintiff, "[b]ecause [the defendant] listed 8 potential witnesses that included several general

and special education teachers, an Assistant Principal, a Dean of Students, and two social workers, [Hecht] had to expend a significant amount of time and preparation in advance of the hearing." Id. ¶ 86.

"[T]he parties appeared at the Student Hearing Office for the Due Process Hearing on October 31, 2014 and November 6, 2014." Id. ¶ 87. "The Hearing lasted approximately 10 hours over [the] two separate days." Id. ¶ 88. The hearing "included opening arguments, direct examination, cross examination, and closing arguments." Id. ¶ 89. The hearing also "included discussion with [the] hearing officer . . . to discuss putting documents into the record, expected witnesses, and legal issues surrounding the claims in the complaint." Id. At the hearing, the plaintiff "presented all 46 of [his] exhibits and all 6 witnesses in support of [his] case." Id. ¶ 90. For its part, the defendant "presented its 10 proposed exhibits, but failed to call even one of the 8 witnesses that it had listed in its disclosure letter." Id. ¶ 91. Nonetheless, Hecht declares that she "had to prepare for [these witnesses] in the event [they] were called." Id.

On December 1, 2014, the hearing officer issued her determination. Pl.'s Mot. Summ. J., Ex. C (Determination). In the 19-page decision, the hearing officer granted the plaintiff much of the relief he requested. See id. at 17–18. For instance, the hearing officer ordered the defendant to "review and revise [the Student's] IEP to reflect a minimum of 27.5 hours of specialized instruction outside the general education setting, a minimum of one hour per week of behavioral support services outside the general education setting, and any other necessary related services." Id. at 17. Furthermore, the hearing officer ordered the defendant to "reimburse [New Beginnings] for any and all reasonable and/or necessary costs associated with educating [the Student] incurred from the time [the Student] was unilaterally placed at [New Beginnings] . . . ,

until [the Student's] IEP is revised and a Prior Written Notice is issued placing [the Student] at [New Beginnings] or another appropriate school setting." Id.

On February 3, 2015, the plaintiff filed his Complaint for Declaratory Judgment & Relief ("Complaint") in this Court. Compl.  In the Complaint, the plaintiff alleges that the defendant "failed to reimburse the fees and costs due to [the] [p]laintiff, the prevailing party in the underlying administrative action brought under IDEA on behalf of [the Student]." Id. ¶ 2.  In his prayer for relief, the plaintiff seeks a declaration that he is "the prevailing party under the IDEA, and therefore, . . . [he] is entitled to recover reasonable legal fees and costs incurred in the litigation." Id. at 24.  Further, the plaintiff seeks a declaration "that the rate paid to . . . Hecht . . . should be the rate proscribed under the Laffey Matrix." Id.  Likewise, the plaintiff asks the Court to declare that Hecht's paralegal, Chithalina Khanchalern, "should be paid at the rate proscribed under the Laffey Matrix for paralegals." Id.  Based on the allegedly applicable Laffey Matrix rates, the plaintiff asks "the Court [to] award the [p]laintiff the sum of $38,258.69 in attorneys' fees and costs." Id.  Additionally, the plaintiff asks the Court to "award [the] [p]laintiff fees for litigating the current Complaint in [this] Court . . . for the purpose of collecting fees in the underlying administrative action." Id. at 25.

On June 13, 2015, the plaintiff filed his motion for summary judgment.  In his motion for summary judgment, the plaintiff argues that Hecht "is qualified based on her skills, reputation, and her market rate to receive the full Laffey Matrix rates." Pl.'s Mem. at 5.  To bolster this argument, the plaintiff asserts that the documentation that he provided in connection with his motion substantiates his claim that he is entitled to attorney fees at the full Laffey Matrix rate. Specifically, the plaintiff notes that he submitted with his motion "[a]ttorney Hecht's Verified Statement," "a 2013 [National Law Journal] Billing Survey," and "affidavits from [two] other

attorneys who also represent[] parents in special education matters in this jurisdiction." Id. at 5–6. The plaintiff also points to cases in which various judges on this Court have awarded Hecht "100% of the Laffey Matrix Rate." Id. at 7. Similarly, the plaintiff contends that "Khanchalern has been repeatedly qualified as a paralegal and should be paid full Laffey matrix rates as a paralegal." Id. at 8.

On July 17, 2015, the defendant filed its cross-motion for summary judgment. Def.'s Cross-Mot. Summ. J. In its cross-motion, the defendant notes that the plaintiff "seeks to be paid for 92.65 hours at the rate of $360.00" for Hecht's services. Id. at 12. The defendant further notes that, for Khanchalern, the plaintiff "seeks to be paid for 32.10 hours at the rate of $145.00 per hour" for her services. Id. However, the defendant contends that, for Hecht, the plaintiff "should be paid no more than $270.00 per hour for 58 hours beginning at September 18, 2014, the date the Due Process Complaint was filed." Id. And for Khanchalern, the defendant adds, the plaintiff "should be paid no more than $108.74 per hour for 19 hours." Id.

These reductions reflect the defendant's position that the plaintiff is "only entitled to 3/4 of the Laffey matrix rate for this matter." Id. at 1. To buttress this position, the defendant contends that the plaintiff has failed to "offer [] relevant evidence supporting the prevailing rate in the community for the type of work done . . . in this case." Id. at 2. The defendant notes that the plaintiff relies "on the Laffey Matrix to establish the rates prevailing in the community for [Hecht's] services." Id. However, the defendant asserts that the plaintiff's "reliance on the Laffey Matrix is misplaced." Id. at 3. In support of this assertion, the defendant observes that "the Laffey Matrix rates only establish the presumptive maximum market rates for complex federal litigation." Id. In the defendant's estimation, however, the plaintiff "offer[s] no evidence that IDEA administrative proceedings are subject to the same hourly rates that prevail in

complex federal litigation." Id.  The defendant further maintains that the cases applying the

Laffey Matrix to IDEA administrative proceedings are "wrong as a matter of law" and, therefore,

"cannot establish the prevailing market rate for [such proceedings]." Id. at 4.  To strengthen this

contention, the defendant cites a line of cases in this District "in which a rate less than Laffey has

been awarded to plaintiffs' counsel in IDEA actions." Id. at 9.

The defendant also relies on the Supreme Court's decision in Perdue v. Kenny A. ex rel.

Winn, 559 U.S. 542, 552 (2010).  In Perdue, the Supreme Court wrote that its "prior decisions

concerning the federal fee-shifting statutes have established six important rules." Id.  One of

these is that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake

the representation of a meritorious civil rights case." Id.  Then, the defendant notes that "several

judges of this [District] have awarded . . . Hecht fees at 3/4 of the Laffey rate." Def.'s Cross-

Mot. Summ. J. at 9 (citing cases).  "Given the number of cases in which a rate less than Laffey

has been awarded to [Hecht]," the defendant continues, "it is clear that the court need not award

Laffey rates . . . to convince [her] to take IDEA cases." Id.

## II.    STANDARD OF REVIEW

Before granting a motion for summary judgment pursuant to Federal Rule of Civil

Procedure 56, a court must find that "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is material if it

'might affect the outcome of the suit under the governing law,' and a dispute about a material

fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are . . . not . . . [decisions for] a judge [to make] . . . ruling on a motion for summary judgment . . . ." Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (second alteration in original) (citation omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a motion for summary judgment, but rather "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

### III.   ANALYSIS

#### A.   Attorneys' Fees

"The IDEA requires the District to provide disabled children with a 'free appropriate public education.'" Eley v. District of Columbia, 793 F.3d 97, 99 (D.C. Cir. 2015) (quoting 20 U.S.C. § 1400(d)(1)(A)). "If the District fails to do so, the child's parents can file an

administrative complaint with the District Office of the State Superintendent of Education . . . ." Id. (citing § 1415(b)(6)).  "And if the administrative-complaint route fails, the parents can sue the District in district court."  Id. (citing § 1415(i)(2)–(3)).

"If the parents' lawsuit succeeds, the court, 'in its discretion, may award reasonable attorneys' fees.'"  Id. (quoting § 1415(i)(3)(B)(i)(I)).  "An IDEA fee award 'shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished.'"  Id. (quoting § 1415(i)(3)(C)).  "Thus, if the court finds that 'the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience,' it 'shall reduce . . . the amount of the attorneys' fees awarded.'"  Id. (alteration in original) (quoting § 1415(i)(3)(F)(ii)).

The District of Columbia Circuit employs a three-part test to determine an appropriate fee award.  "First, the court must determine the number of hours reasonably expended in litigation." Id. at 100 (citation omitted).  "Second, it must set the reasonable hourly rate."  Id. (citation omitted).  "Finally, it must determine whether use of a multiplier is warranted."  Id. (citation omitted).  "The fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates and the opposing party remains free to rebut a fee claim."  Id. (citation omitted).  As "the IDEA prohibits [the] application of any 'bonus or multiplier,'" id. (quoting § 1415(i)(3)(C)), the Court proceeds to analyze the reasonableness of the plaintiff's requested (1) hourly rates and (2) number of hours expended in litigation.

To show that the requested hourly rate is reasonable, "a fee applicant must 'produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are

in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" Id. (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).  This Circuit allows fee applicants to "submit attorneys' fee matrices as one type of evidence that provide[s] a useful starting point in calculating the prevailing market rate." Id. (alteration and citation omitted).  "The most commonly used fee matrix [in this Circuit] is the Laffey Matrix . . . ." Id. (citing Laffey v. N.W. Airlines, Inc., 572 F. Supp. 354, 371 (D.D.C. 1983)).  "Laffey . . . established . . . [a fee] schedule for lawyers who practice 'complex federal litigation[.]'" Id.

"Competing updated Laffey Matrices have developed . . . ." Id. at 101.  "The first Laffey Matrix is maintained and updated by the District United States Attorney's Office (USAO Laffey Matrix)." Id.  "The USAO Laffey Matrix starts with '[t]he hourly rates approved in Laffey . . . for work done principally in 1981–82' as its baseline." Id. (alterations in original) (citation omitted).  Then, "[i]t adjusts these rates to account for inflation by using the Consumer Price Index for All Urban Consumers (CPI–U) of the United States Bureau of Labor Statistics." Id. (citation omitted).  By contrast, "a competing Laffey Matrix (LSI Laffey Matrix) . . . uses the Legal Services Index of the Bureau of Labor Statistics to adjust for inflation." Id.  "[T]he LSI Laffey Matrix adjusts for the increases in costs for legal services only." Id. at 101–02.

This Circuit has yet to decide whether "IDEA litigation is . . . sufficiently 'complex' to use either version of the Laffey Matrix (and if so, which version of the Laffey Matrix is more appropriate)." Id. at 105.  However, in Eley, the Circuit vacated a district court's decision to use the LSI Laffey Matrix in determining a fee award under the IDEA. Id.  In so deciding, the Circuit stated that the plaintiff "had the burden to produce satisfactory evidence—in addition to [her] attorney's own affidavits—that [her] requested rates [were] in line with those prevailing in

the community for similar services by lawyers of reasonable comparable skill, experience, and reputation." Id. at 104 (some alterations in original) (citation omitted).  However, the Circuit reasoned that the following "evidentiary submission" failed to meet this standard: "the LSI Laffey Matrix, . . . [a scholar's] declaration explaining the LSI Laffey Matrix[,] and [the plaintiff's] lawyer's verified statement averring that [the lawyer] charged his paying clients the rates in the LSI Laffey Matrix." Id.  In the Circuit's judgment, these submissions included no "evidence that [the plaintiff's] requested rates [were] in line with those prevailing in the community for similar services[.]" Id. (citations omitted).  The Circuit further noted that the plaintiff "directed the district court to only four cases that had employed the LSI Laffey matrix— none of which was an IDEA case." Id.  Therefore, the Circuit concluded that the district court "abused its discretion" by "relieving [the plaintiff] of her burden." Id. at 105.  Consequently, the Circuit vacated and remanded for further proceedings consistent with its opinion. Id.[3]

In this District, "there has not been a unified approach to the proper rates for attorneys' fees in IDEA cases[.]" Young v. District of Columbia, 893 F. Supp. 2d 125, 130 (D.D.C. 2012). Some judges "discount[] the [USAO] Laffey Matrix rates by 25%," id. (citing Rooths v. District of Columbia, 802 F. Supp. 2d 56, 63 (2011)), based on the notion that IDEA cases usually are not "of sufficient complexity to justify a different rate," McNeil v. District of Columbia, No. 14-1981 (RC), 2015 WL 9484460, at *6 (D.D.C. Dec. 29, 2015).  "Other courts in this District, however, ha[ve] rejected the suggestion that IDEA administrative litigation is categorically less complex than other forms of litigation, and reaffirm[ed] that IDEA cases are sufficiently

---

[3]  This Court's research did not reveal any Circuit Courts outside of this Circuit discussing the propriety of using either Laffey Matrix in IDEA cases.  Furthermore, while another District of Columbia Circuit case discusses the Laffey Matrix in the IDEA context, see generally Price v. District of Columbia, 792 F.3d 112 (D.C. Cir. 2015), Price does not answer the question before the Court here, namely, whether the USAO Laffey Matrix is an appropriate benchmark for determining an attorneys' fee award under the IDEA.

complex to allow application of the <u>Laffey</u> Matrix." <u>Young</u>, 893 F. Supp. 2d at 131 (citing cases).

This member of the Court has endorsed a hybrid version of these two approaches. "[T]he undersigned generally rejects an award of the full [USAO] <u>Laffey</u> Matrix rate in non-complex IDEA cases litigated solely at the administrative level, finding that [t]he [USAO] Matrix is not <u>ipso</u> <u>facto</u> determinative of the proper hourly rate . . . ." <u>Salmeron v. District of Columbia</u>, 77 F. Supp. 3d 201, 210–11 (D.D.C. 2015) (some alterations in original) (citation omitted), <u>vacated on other grounds,</u> 113 F. Supp. 3d 263 (D.D.C. 2015). "Instead, it is the general position of the undersigned to use the [USAO] <u>Laffey</u> Matrix rate as the appropriate measure of the prevailing market rate in IDEA cases and then evaluate on a case-specific basis what amount of attorneys' fees should be awarded." <u>Id.</u> at 211 (citation omitted).

In one case, this member of the Court awarded the plaintiff approximately 90% of the USAO <u>Laffey</u> rate "after a lengthy and contested hearing." <u>Garvin v. District of Columbia</u>, 851 F. Supp. 2d 101, 106 (D.D.C. 2012). In <u>Garvin</u>, the Court cited the following facts to justify this award:

> Plaintiff A.G.'s administrative hearing involved [eleven] exhibits totaling over [seventy] pages. The exhibits included reports from two psychological evaluations, report cards, behavior intervention plans, etc. D.C. Public Schools offered [two] exhibits totaling approximately [seventeen] pages. D.C. Public Schools filed a detailed Answer. A prehearing conference was held and the hearing officer issued a [four] page pre-hearing order. Plaintiffs listed [fifteen] witnesses and D.C. Public Schools disclosed [fourteen] witnesses to testify at the hearing. These witnesses included a speech/language pathologist, psychologist, teachers, therapists, [three] DCPS supervisors, IEP coordinator and the DCPS director of special education. Whether they ultimately testified at the hearing or not, undersigned counsel needed to be prepared to respond to each and every witness listed by D.C. Public Schools. The hearing lasted virtually a full day. Each party filed lengthy written closing arguments. The hearing officer subsequently issued a [twelve] page single spaced decision awarding [the] petitioner the relief being sought.

<u>Id.</u> at 106–07.

In another case, this member of the Court held that 75% of the USAO <u>Laffey</u> rate was proper.  <u>Jay v. District of Columbia</u>, 75 F. Supp. 3d 214, 221–22 (D.D.C. 2014).  In so holding, the Court reasoned that the case was "relatively straightforward."  <u>Id.</u> at 222.  To support its reasoning, the Court relied on the following factors: (1) "the case was resolved prior to extensive participation in the due processes hearing, primarily through negotiations, and memorialized in a four-page Consent Order," <u>id.</u> at 222; (2) "although the plaintiff's physical and developmental impairments posed a level of complexity, . . . the case did not present any novel legal issue, and it did not require extensive legal briefing or discovery," <u>id.</u> at 221; and (3) "the plaintiff presented only one witness at the hearing before the hearing was aborted so the parties could discuss settlement," <u>id.</u> at 222.

However, in <u>Jay</u>, the Court raised the award to approximately 80% of the USAO <u>Laffey</u> Matrix.  In reaching this disposition, the Court declared that the defendant "failed to respond to the plaintiff's counsel's overtures for an early resolution and did not respond to those attempts until the evening before the scheduled administrative hearing."  <u>Id.</u>  This failure, the Court concluded, "directly contributed to an increased level of complexity of this case, which would not have occurred if plaintiff's counsel had not . . . been required to prepare for the administrative hearing."  <u>Id.</u>

Here, the plaintiff has largely shown that Hecht's requested hourly rate of $360.00 is reasonable.  In her verified statement, Hecht declares that she "currently matches [her] hourly rates to those in . . . the USAO adjusted <u>Laffey</u> matrix and has had several paying clients that have paid these rates."  Pl.'s Ver. State. Att'y Hecht ¶ 12.  Furthermore, other judges in this District have awarded Hecht 100% of the <u>Laffey</u> Matrix.  <u>See, e.g.</u>, <u>Robinson v. District of Columbia</u>, 61 F. Supp. 3d 54, 66 (D.D.C. 2014).  Additionally, the plaintiff submitted the

affidavits of two attorneys, Carolyn Houck and Elizabeth Jester.  Houck Aff.; Jester Aff.  Both

Houck and Jester declare that they practice special education law, litigate IDEA cases against the

District of Columbia, and charge the USAO <u>Laffey</u> rate when they represent both paying and

non-paying clients.  <u>See</u> Houck Aff. ¶¶ 4–5, 7; Jester Aff. ¶¶ 4–5.

Moreover, this case is at least as complex as <u>Garvin</u>, in which this member of the Court

awarded 90% of the USAO <u>Laffey</u> rate.  There, the hearing involved thirteen exhibits.  <u>Garvin</u>,

851 F. Supp. 2d at 107.  Here, by contrast, the hearing involved fifty-six exhibits.  Furthermore,

whereas the hearing in <u>Garvin</u> lasted virtually a full day, <u>id.</u> at 107, the hearing in this case lasted

for ten hours over two days.  Granted, in <u>Garvin</u>, the parties disclosed twenty-nine witnesses, <u>id.</u>,

fifteen more than the fourteen disclosed here, <u>supra</u> p. 3.  However, <u>Garvin</u> does not specify how

many of the twenty-nine witnesses actually testified, whereas there is no dispute that the plaintiff

called all six of his witnesses at the hearing.  In addition, the District of Columbia disclosed

similar witnesses in <u>Garvin</u> (e.g., teachers, speech/language pathologist, psychologist, therapists,

DCPS supervisors, IEP coordinator, and the DCPS director of special education), 851 F. Supp. at

107, as in the instant matter (several general and special education teachers, an Assistant

Principal, a Dean of Students, and two social workers), <u>supra</u> p. 3.  Additionally, the pre-hearing

order in this case presented as many as eleven discrete issues, and the hearing officer's 19-page

determination was longer than the 12-page determination in <u>Garvin</u>.

For these reasons, the plaintiff has shown that it is reasonable to base Hecht's attorney

fees on the USAO <u>Laffey</u> Matrix.  However, as the plaintiff litigated this case solely at the

administrative level, the Court will not award 100% of the USAO <u>Laffey</u> rate.  Given the

quantity and quality of the evidence submitted, as well as the relative complexity of this case, the

Court will award the plaintiff 92% of the USAO <u>Laffey</u> rate for Hecht's services.

By contrast, the Court will award Khanchalern only 85% of the USAO <u>Laffey</u> rate for paralegals.  In <u>Jay</u>, the Court awarded Khanchalern 75% of the USAO <u>Laffey</u> rate.  75 F. Supp. 3d at 224.  In reaching this disposition, the Court relied on "the plaintiff's own admission [that], in the cases in which Ms. Khanchalern was awarded paralegal fees, she was consistently awarded only seventy-five percent of the <u>Laffey</u> Matrix rate for paralegals."  <u>Id.</u>  In <u>Garvin</u>, however, the Court awarded a paralegal with "eighteen years of experience as a full-time paralegal" approximately 95% of the applicable USAO <u>Laffey</u> rate.  851 F. Supp. 2d at 108.  In so concluding, the Court relied on three factors: (1) "[t]he paralegal's experience"; (2) "the fact that her rate [was] below the <u>Laffey</u> Matrix rate for paralegals"; and (3) "the plaintiffs' argument that the work delegated to [the paralegal] was necessary to the litigation and would need to be performed by [the attorney] at a much greater cost if paralegal services were not available."  <u>Id.</u> (some alterations in original).

Here, one can both compare and contrast the facts with those in <u>Jay</u> and <u>Garvin</u>.  As in <u>Jay</u>, the plaintiff acknowledges that Judge Kay has "reduced [Khanchalern's] rate to 75% of Laffey . . . because of [the] determination that the case was not complex enough to warrant full <u>Laffey</u> Matrix rates for either the attorney or the paralegal."  Pl.'s Mem. at 10 (citation omitted).  However, the plaintiff also identifies two cases in which judges in this District have awarded Khanchalern 100% of the USAO <u>Laffey</u> rate.  <u>Robinson</u>, 61 F. Supp. 3d at 66; <u>Duncan v. District of Columbia</u>, 1:13-cv-01062-RWR, slip op. (D.C.C. June 17, 2014), <u>adopted</u>, 1:13-cv-01062-RWR (D.C.C. Aug. 28, 2014).  Furthermore, like in <u>Garvin</u>, Hecht declares that Khanchalern "worked with . . . Hecht exclusively on IDEA cases . . . and performed substantive legal tasks . . . that would otherwise have been completed by . . . Hecht at twice the billing rate."  Pl.'s Mem. at 8.  However, whereas the paralegal's experience spanned eighteen years in <u>Garvin</u>, Khanchalern

had approximately two years of experience as a paralegal at the time she provided services in this case.  See Pl.'s Ver. State. Hecht ¶¶ 44, 49–53.

Awarding Khanchalern 85% of the USAO Laffey rate is a sensible way to reconcile this case with Jay and Garvin.  The Court is reluctant to award Khanchalern the full USAO Laffey rate absent a more decisive trend in this District that, in IDEA cases litigated solely at the administrative level, the full amount is reasonable.  Furthermore, with the exception of the USAO Laffey Matrix and the cases in which Khanchalern received 100% of Laffey, the plaintiff has adduced no evidence that Khanchalern's requested rate is in line with the prevailing rate for other similarly qualified paralegals.  Additionally, the fact that Khanchalern lacks significant experience as a paralegal counsels against awarding her 100% of Laffey.  Accordingly, for Khanchalern, the Court will award the plaintiff 85% of the USAO Laffey rate.[4]

The Court still must decide whether the number of hours that the plaintiff requests for Hecht's and Khanchalern's services is reasonable.  According to the invoice that the plaintiff submitted with his motion for summary judgment, Hecht and Khanchalern worked on the case for, respectively, 92.65 hours and 32.10 hours.  Pl.'s Mot. Summ. J., Ex. A (Invoice) at 69, 100. The defendant states that the Court should award Hecht and Khanchalern "no more" than, respectively, 58 hours and 19 hours.  Def.'s Cross-Mot. Summ. J. at 12.  Furthermore, the

---

[4]  With one exception, the preceding analysis addresses and rejects the parties' arguments for why the Court should award a different amount of attorneys' fees.  Yet the Court did not explicitly address the defendant's argument that the Supreme Court's decision in Perdue shows that 75% of the Laffey rate would be a reasonable attorney fee in this case.  The Court rejects this argument.  Perdue merely states that a reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case.  559 U.S. at 552.  Because Hecht has received 75% of the Laffey rate and continues to litigate IDEA cases, the defendant concludes that this percentage is sufficient to induce her to undertake such cases.  However, this argument ignores the fact that various judges in this District, including the undersigned, have awarded Hecht more than 75% of the Laffey rate. Furthermore, the language in Perdue upon which the defendant bases this argument is dicta, and Perdue was not considering the propriety of applying the Laffey Matrix in IDEA cases.  Accordingly, this argument fails.

defendant asserts that only hours billed on or after September 18, 2014 should be compensated. Id. Curiously, however, the defendant fails to set forth any arguments to support this position.

Although the defendant's failure is perplexing, Hecht's request for 92.65 hours is not entirely reasonable. Hecht's invoice contains billing entries from September 4, 2012 to May 23, 2014. However, the entries reflect that the work performed during this period was preliminary in nature and not meaningfully related to the mother's filing of the June 2014 due process complaint. Furthermore, the billing entries for this period show long gaps during which Hecht failed to work on the case. For instance, between December 26, 2012 and May 23, 2014, a period of approximately 1.5 years, Hecht worked on the case on just one day and for only 18 minutes. Pl.'s Mot. Summ. J., Ex. A (Invoice) at 6–7; see also Cook v. District of Columbia, 115 F. Supp. 3d 98, 104–05 (D.D.C. 2015) ("[W]here administrative fee charges have no temporal proximity to the proceeding on which the right to fees is based but instead appear to be administrative matters between counsel and client, these charges are not appropriate for reimbursement[.]" (citing Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 973 (D.C. Cir. 2004))). Accordingly, the Court will subtract from Hecht's 92.65 hours payment request the 4.45 hours claimed for the period from September 4, 2012 to May 23, 2014, resulting in a reduction to 88.2 hours.

The Court finds that payment for the remaining 88.2 hours is reasonable. Hecht's billing entries are reasonably detailed and, with the exception of several tasks related to hearing preparation, reflect no block-billing. Although 88.2 hours may be on the high end of what courts customarily award for successfully prosecuting an IDEA case at solely the administrative level, this total is within the range of reasonableness. See Sweatt v. District of Columbia, 82 F. Supp. 3d 454, 461 (D.D.C. 2015). In Sweatt, Judge Berman Jackson awarded the plaintiff "97.3

hours," id., on facts no more complex than those here, id. at 457 ("During the [one-day administrative] hearing, [the] plaintiff entered fifty-eight documents into evidence, and [the] defendant entered one document.  The hearing included the testimony of six witnesses, including two experts . . . .  [T]he Hearing Officer issued a decision in [the] plaintiff's favor.").  And, as noted, this case was somewhat more complex than the typical IDEA administrative case.  Accordingly, the plaintiff has shown that he is entitled to 88.2 hours at the rate of $331.20 ($360 x 92%) for the services that Hecht performed, for a subtotal of $29,211.84.

By contrast, the Court finds that the plaintiff is entitled to the full 32.10 hours for Khanchalern.  Unlike Hecht, Khanchalern worked on the case continuously from September 2012 until January 2015.  Furthermore, Khanchalern's billing entries do not reflect block-billing, are reasonably detailed, and describe activities (e.g., corresponding with the parties regarding the case and reviewing case files) that are consistent with the work of a paralegal.  See generally Pl.'s Mot. Summ. J., Ex. A (Invoice) at 69–100.  Moreover, Khanchalern's billing entries do not indicate that she charged the plaintiff for "'[p]urely clerical or secretarial tasks.'"  Role Models, 353 F.3d at 973 (emphasis added) (quoting Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989)).  Accordingly, the plaintiff is entitled to 32.10 hours at the rate of $123.25 ($145 x 85%) for the services that Khanchalern performed, for a subtotal of $3,956.33.

**B.    Costs**

The last issue for the Court to address is whether the Court should award the plaintiff costs and, if so, in what amount.  The plaintiff requests costs amounting to $278.19.  These costs include copying expenses at the rate of "15 cents per [page]," Pl.'s Mem. at 34, "parking for the [plaintiff] and [Hecht] to attend the due process hearing," id., and "46 or 49 cents" for stamps purchased from the United States Postal Office, Pl.'s State. Mat. Facts ¶ 8.  Although the

defendant counters that the Court should reduce the costs to $108.74, the defendant totally fails

to explain why the Court should reduce the costs.

In <u>Garvin</u>, this Court stated that "[r]easonable photocopying, postage . . . and parking

costs are customarily considered part of a reasonable attorney's fee."  851 F. Supp. 2d at 108

(citation omitted).  Several other judges from this District have reached the same conclusion.[5]

However, at least two judges in this District have held that the term "cost" under the

IDEA does not include parking expenses.  <u>Blackman v. District of Columbia</u>, 56 F. Supp. 3d 19,

30 (D.D.C. 2014) (citing, <u>inter alia</u>, <u>Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy</u>, 548 U.S.

291, 301 (2006)).  In <u>Blackman</u>, a member of this Court cited the Supreme Court's decision in

<u>Arlington</u> for the proposition that "'costs' in IDEA cases are defined and limited by the list in 28

U.S.C. § 1920."  <u>Id.</u> (citing <u>Arlington</u>, 548 U.S. at 301).  In <u>Arlington</u>, Justice Alito states that

"the term 'costs' in 20 U.S.C. § 1415(i)(3)(B) . . . is defined by the categories of expenses

enumerated in 28 U.S.C. § 1920."  548 U.S. at 301.  Furthermore, on its face, § 1920 does not

authorize parking or postage fees.  <u>See</u> 28 U.S.C. § 1920; <u>see also</u> <u>Smith v. Tenet Healthsystem</u>

<u>SL, Inc.</u>, 436 F.3d 879, 889 (8th Cir. 2006) ("Section 1920 does not authorize taxing [the

plaintiff] for the defendants' postage . . . ."); <u>Duckworth v. Whisenant</u>, 97 F.3d 1393, 1399 (11th

Cir. 1996) (stating that "parking fees . . . are clearly nonrecoverable" under § 1920).

<u>Arlington</u> fails to compel the conclusion, however, that parking and postage costs are

unrecoverable under the IDEA.  Justice Alito's statement that the term cost under §

1415(i)(3)(B) is limited to the costs under § 1920 is dicta; <u>Arlington</u> holds only that the term cost

under § 1415(i)(3)(B) does not include "fees for services rendered by experts in IDEA actions."

---

[5] <u>Brown v. District of Columbia</u>, 80 F. Supp. 3d 90, 102 (D.D.C. 2015) (citations omitted); <u>DeLa Cruz v. District of Columbia</u>, 82 F. Supp. 3d 199, 210 (D.D.C. 2015); <u>Young v. District of Columbia</u>, No. 14–1181 DAR, 2015 WL 5729119, at *7 (D.D.C. Sept. 30, 2015) (citations omitted); <u>Holbrook v. District of Columbia</u>, 305 F. Supp. 2d 41, 46 (D.D.C. 2004) (citation omitted).

548 U.S. at 294.  Furthermore, after <u>Arlington</u>, at least one Circuit has stated that § 1920 includes "amounts spent on . . . postage."  <u>Tchemkou v. Mukasey</u>, 517 F.3d 506, 512 (7th Cir. 2008) (citation omitted).  And other Circuits have indicated that a party may recover "non-taxable costs" under § 1920 where the party shows that "it is the prevailing practice in the given community for lawyers to bill those costs separate from their hourly rates."  <u>Grove v. Wells Fargo Fin. Cal., Inc.</u>, 606 F.3d 577, 583 (9th Cir. 2010); <u>see also</u> <u>InvesSys, Inc. v. McGraw-Hill Cos.</u>, 369 F.3d 16, 22 (1st Cir. 2004) (alteration in original) (citations omitted) ("[D]isbursements made by an attorney and ordinarily billed directly to the client . . . can properly be encompassed within the phrase attorney's fee, and it is not uncommon for courts to allow such costs as . . . parking on top of the hourly fee.").  Therefore, absent clearer guidance from the Supreme Court or the District of Columbia Circuit, this Court will follow its decision in <u>Garvin</u>, as well as the plurality of other judges in this District, and hold that plaintiffs prevailing under the IDEA may recover reasonable parking and postage expenses.

Here, the Court awards the plaintiff $260.19 in costs.  The plaintiff's copying and postage charges are reasonably detailed.  Further, the amounts for which the plaintiff seeks reimbursement are in line with what other courts in this District have awarded for copying and postage.  In addition, the Court will allow the plaintiff to recover the parking charges that Hecht and Khanchalern incurred in connection with the due process hearings.  As explained, courts routinely award such costs in this District and <u>Arlington</u>'s dicta, while requiring consideration, does not answer the precise question before the Court.

However, the Court denies the plaintiff's request for $18 for the parking charges the plaintiff personally incurred to attend the first day of the hearing.  The plaintiff has not adequately explained whether he paid this charge or whether Hecht paid it on his behalf.  Either

way, it is hard to fairly characterize this charge as a cost that attorneys customarily bill to clients separate from their hourly rates, and the plaintiff has made no such showing.  Accordingly, an award of $260.19 in costs is appropriate.

## IV.   CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the plaintiff's motion for summary judgment and denies the defendant's cross-motion for summary judgment. As a result, the defendant must pay the plaintiff a reasonable attorney fee in the amount of $33,168.17, which includes $29,211.84 for the services performed by Hecht and $3,956.33 for the services performed by Khanchalern.  Furthermore, the defendant must pay the plaintiff reasonable costs in the amount of $260.19.  Finally, as specified in the accompanying Order, the Court directs the parties to file supplemental briefing regarding whether the plaintiff is entitled to additional attorneys' fees and costs for litigating the Complaint seeking the relief that has been awarded in this case.

**SO ORDERED** this 28th day of April, 2016.

REGGIE B. WALTON
United States District Judge